IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

IN RE:

ODYSSEY PETROLEUM CORP. (US)                    CASE NO. 10-01482-NPO
                                                                              Chapter 11

DEBTOR

FINAL ORDER (A) AUTHORIZING POST-PETITION FINANCING
ON A SECURED AND SUPERPRIORITY BASIS PURSUANT TO
11 U.S.C. §§ 105, 361, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507(b)
AND (B) GRANTING OTHER RELATED RELIEF
[Dkt. ## 053; 064; 070; 077; 080]

THIS MATTER came before the Court for consideration on the Amended Motion of

Odyssey Petroleum Corp. (US), the Debtor and debtor-in-possession herein (the "Debtor" or the

"Company") requesting a *Preliminary and Final Order (A) Authorizing Postpetition Financing*

*on a Secured and Superpriority Basis Pursuant to 11 U.S.C. §§ 105, 361, 363, 364(c)(1),*

*364(c)(2), 364(c)(3), and 507(b), (B) Granting Other Related Relief and (C) Scheduling a Final*

*Hearing Pursuant to Rule 4001(c)(2)* (the "Motion"), [Dkt ## 053; 070], the Objection of the

Official Committee of Unsecured Creditors (the "Committee") [Dkt. # 077] (the "Objection");

and the Response of Iroquois Capital Opportunity Fund (the "ICO Fund" or the "DIP Lender") to

the Objection [Dkt. # 080]. The Court, having reviewed the pleadings and having heard the

testimony of the Debtor and the arguments of Counsel, finds and orders as follows:

1.      On April 23, 2010 (the "Petition Date"), the Debtor filed its Voluntary Petition

under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is

a Mississippi business corporation that is the wholly owned subsidiary of Odyssey Petroleum

Corp., a British Canadian corporation, which maintains offices at Suite 303, 595 Howe Street,

Vancouver, B.C. V6C 2T5. The Debtor's operations are focused on emerging oil and gas exploration and developing oil and natural gas reserves in the southern United States, and particularly in fields located primarily in the Mississippi Interior Salt Basin. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manages its properties and assets as Debtor in possession.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (D). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3.      The Committee was been appointed by the United States Trustee [Dkt. # 074] and is serving in this case.

4.      Based on the impact of an adverse arbitration award against the Debtor in excess of $1 million, and the Debtor's inability to obtain unsecured trade debt as well as traditional secured financing, the Debtor's diminishing income in recent years and falling oil prices, the Debtor's operations have been limited. Substantially all of the Debtor's suppliers and vendors now have place the Company on a payment-in-advance basis. Between the loss of the credit these suppliers and vendors had previously extended and the cash requirements for the Debtor to make critical vendor payments authorized by the Court (*Order Granting Motion Regarding Chapter 11 First Day Motions*, Docket No. 44), to assume necessary executory contracts and unexpired leases (*Orders Granting Emergency Motion to Assume Leases or Executory Contracts*, Docket Nos. 62 and 63), and to pay costs and expenses associated with this bankruptcy case, the Debtor will need access to additional moneys over and above the income generated from its operations.

-2-

5.     Additionally, during the weeks of May 10, 2010 and May 17, 2010, certain wells of the Debtor had been producing approximately 25% of the Debtor's gross income went down. The Debtor incurred additional costs in making those repairs, and also lost the production from those wells during the period they were down and out of production.

6.     In light of its present circumstances, it is necessary that the Debtor obtain interim and final financing while it explores its alternatives in this chapter 11 case, including a recapitalization of the Company or a sale of its assets while the Debtor is still a going concern, either of which will be necessary to preserve the value of the business and to maximize the recovery to its creditors.

7.     The Debtor's considered and reasonable business judgment was that, after considering all alternatives, the financing provided by the DIP Lender under the terms reflected in this Final Order represents the best financing available to the Debtor and was on the most favorable terms the Debtor could obtain.

8.     The DIP Loan and Security Agreement, as amended by this Order, was negotiated in good faith and at arms-length between the Debtor and the DIP Lender. Accordingly, the parties to the DIP Loan and Security Agreement, as amended by this Order, are entitled to protections of Section 364(e) of the Bankruptcy Code.

9.     Pursuant to Bankruptcy Rule 4001(c)(2), the Court conducted a preliminary hearing on May 20, 2010, and authorized the secured interim postpetition financing in the amount of $300,000 as necessary to avoid immediate and irreparable harm to the Debtor's bankruptcy estate pending a final hearing. The Court entered its *Interim Order (A) Authorizing Post-Petition Financing on a Secured and Superpriority Basis pursuant to 11 U.S.C. §§ 105,*

*361, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507(b), (B) Granting Other Related Relief and (C)*
*Scheduling a Final Hearing pursuant to Rule 4001(c)(2)*(Docket No. 64) (the "Interim Order")
on May 21, 2010.

      10.    Under Bankruptcy Rule 4001(c)(2), the Court may commence a final hearing on a
motion for authority to obtain credit no earlier than fourteen (14) days after service of the motion
and notice of hearing on the motion. The Court set the final hearing on the Motion for Monday,
June 11, 2010 in order to give sufficient notice of the Motion to all creditors and parties in
interest.

      11.    Proper notice of the final hearing of the Motion was provided by the Debtor as
reflected in the Notice of Hearing (the "Notice") that was served on all parties in interest on May
24, 2010 as evidenced by the Certificate of Service filed herein [Dkt. # 072]. The Notice
provided, *inter alia*, that all objections to the Motion and Interim Order were to be filed by June
9, 2010, and that a final hearing on the Motion was scheduled to be held on Friday, June 11,
2010, at 10:00 a.m., United States Bankruptcy Court for the Southern District of Mississippi, 100
East Capitol Street, Courtroom 170, Jackson, MS 39201. The Notice was adequate under the
circumstances and thus satisfies Fed. R. Bank. P. 4001(d).

      12.    The only objection that was timely filed to the Motion by any creditor or party in
interest was the Objection filed by the Committee. To the extent that Objection has not been
resolved by the additional findings and rulings of this Court as set forth herein, it is overruled.
Based on the pleadings filed, and the testimony presented, approval of the DIP Loan and
Security Agreement, as amended by this Order, is in the best interests of Debtor, Debtor's estate
and Debtor's creditors.

- 4 -

13. Approval of the DIP Loan and Security Agreement, as amended by this Order, is in the best interests of Debtor, Debtor's estate and Debtor's creditors. The DIP Loan and Security Agreement, as amended by this Order, represents the most favorable terms under which Debtor can obtain financing necessary to continue operations and preserve the value of its estate for creditors. The DIP Loan and Security Agreement, as amended by this Order, is fair and reasonable and represents the sound exercise of the Debtor's business judgment. Good cause exists to grant the relief provided for herein on a final basis.

**IT IS, THEREFORE ORDERED** that the Debtor is authorized to obtain post-petition financing from Iroquois Capital Opportunity Fund L.P. ("IPO Fund" or "DIP Lender") in the form of a revolving Line of Credit and to borrow up to Three Hundred Thousand Dollars ($300,000.00) on an interim basis prior to the final hearing on the Motion or Amended Motion and thereafter to borrow up to One Million Dollars ($1,000,000.00) pursuant to the terms and conditions of the DIP Loan and Security Agreement, as amended by this Order, and the DIP Loan Documents[1].

**IT IS FURTHER ORDERED** that the Debtor is authorized to obtain credit on an interim basis in an amount of up to Three Hundred Thousand Dollars ($300,000.00) and on a final basis in an amount of up to One Million Dollars ($1,000,000.00) with interest at the rate of rate of nine percent (9%) per annum (an 11% default rate), together with an origination fee of two and one-half percent (2.5%) of the amount of the DIP Loan facility, or $25,000.00, which interim and final DIP Loan shall be repaid on or before October 18, 2010.

---

[1] All capitalized words or terms herein shall have the same meaning as used or defined in the Motion.

**IT IS FURTHER ORDERED** that the Debtor is authorized to enter into and to execute the Loan and Security Agreement (the "DIP Loan and Security Agreement"), which is attached as Exhibit "A" to the Amended Motion filed herein, and to enter into and execute the Promissory Note which is attached as Exhibit "B" to the Amended Motion (the "DIP Note"), both of which are subject to the amendments of this Order.

**IT IS FURTHER ORDERED** that the Debtor is authorized to perform such other and further acts and to execute such other documents and instruments as may be required in connection with the DIP Loan and Security Agreement, as amended by this Order,.

**IT IS FURTHER ORDERED** that the parties to the DIP Loan and Security Agreement, as amended by this Order, are entitled to protections of Section 364(e) of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that, pursuant to section 364(c)(1) of the Bankruptcy Code, that all extensions of credit and other obligations of the Debtor under DIP Loan and Security Agreement, as amended by this Order, at any time or times payable by Debtor in connection therewith (collectively, the "DIP Loan Debt") will be subject to a Superpriority Lien in favor of the DIP Lender, subject, however, to the Carve-Out for professional fees, the UST Fees and administrative expense priority claims of any subsequent chapter 11 trustee or chapter 7 trustee.

**IT IS FURTHER ORDERED** that, pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code, that the obligations of the Debtor under DIP Loan and Security Agreement, as amended by this Order, will be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable priority security interests and liens (junior only to any valid lien or liens which existed and were properly perfected as of when the time the

Bankruptcy Case was commenced by the Debtor) in all property interests and assets of the Debtor of any and every nature, characterization or description whatsoever, including, without limitation, all prepetition and postpetition property and assets, whether real, personal or mixed, whether tangible or intangible, wherever located and whether now owned or hereafter acquired, including, without limitation, all fee, leasehold, easement, mineral and all other interests in real property, and all inventory, equipment, accounts, contract rights, general intangibles, hydrocarbons, fixtures and any other personal property of any kind or character, including, without limitation, all personal property related to, located on or under, arising from, or produced from the Debtor's interests in real property, together with all proceeds, products, offspring, rents and profits thereof (collectively, the "DIP Loan Collateral"), but excluding any recovery actions under chapter 5 of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that the liens and security interests granted in the DIP Loan Collateral hereby shall be valid, perfected and enforceable liens and security interests on the Collateral without filing or recording of any document or instrument or any other action by the Lender. Notwithstanding the foregoing, however, the DIP Lender may file a certified copy of this Final Order with any office or governmental official, including but not limited to any Secretary of State or any Chancery Clerk) to give additional notice of the liens and security interests granted herein.

**IT IS FURTHER ORDERED** that the DIP Loan proceeds shall be used by the Debtor in accordance with the requirements of the DIP Loan and Security Agreement, as amended by this Order,, which restrict the Debtor's use of the DIP Loan proceeds to ordinary and customary expenses as reflected in the Budget attached thereto as Exhibit "A" or such other and more

- 7 -

detailed Budgets as the Debtor may submit to DIP Lender and the Committee.  Nothing herein shall prejudice the right of the DIP Lender or the Committee to seek modification of the Budget. Furthermore, pending approval of the employment of a chief restructuring officer, no payments shall be made by the Debtor to "Contract Geologist" and "Contract Engineer" unless and until said chief restructuring officer advises that such payments are necessary.

**IT IS FURTHER ORDERED** that the holder of any valid and perfected lien against the DIP Loan Collateral that is not avoidable under the Bankruptcy Code ("Valid Prepetition Lien") will retain such perfected lien with the same priority and to the same extent as existed prior to the Petition Date and that the liens in the DIP Collateral granted herein to secure the DIP Loan Debt are granted pursuant to 11 U.S.C. § 364(c)(1)-(3) only and not pursuant to 11 U.S.C. § 364(d)(1).  Accordingly, the aforesaid liens granted herein in the DIP Collateral shall not be senior or equal to any valid lien or liens which existed and were properly perfected as of the Petition Date.

**IT IS FURTHER ORDERED** that notwithstanding the Superpriority Lien sought for DIP Lender herein, the Debtor shall be permitted to pay, as the same may become due and payable the amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) (the "UST Fees").

**IT IS FURTHER ORDERED** that notwithstanding any other provisions to the contrary herein, in the event of the occurrence of a default or an Event of Default under the Loan Documents or this Order (respectively a "Default" or an "Event of Default"),  the DIP Lender shall give written notice (by electronic mail, overnight delivery or personal service) of such default to the Debtor, counsel for the Debtor and to the counsel for the Committee (a "Default

Notice"), and the Debtor shall have a period of five (5) days after such written notice is given to cure such default. Alternatively, without regard to the five-day cure period, for cause, the DIP Lender may seek immediate emergency or equitable or injunctive relief from the Bankruptcy Court.

**IT IS FURTHER ORDERED** that notwithstanding any other provisions to the contrary herein, in the event of the occurrence and during the continuance of a Default or an Event of Default, after the giving of the Default Notice, professional fees and expenses incurred (and allowed by Order of this Court) by professionals employed by the Debtor and by the Committee in an aggregate amount not to exceed $50,000.00 after application of any retainers held by such professionals, shall be paid from DIP Lender's Collateral pursuant to this agreed upon carve-out for unpaid professional fees and expenses (collectively, the "Carve Out"). The Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Lender. The UST Fees shall not be limited by the Carve Out.

**IT IS FURTHER ORDERED** that upon the occurrence of an Event of Default that is not timely cured, as defined in the DIP Loan and Security Agreement, as amended by this Order, (i) the consent of the DIP Lender to the Debtor's use of Cash Collateral shall be withdrawn; (ii) the Debtor shall cease using Cash Collateral; and (iii) the Debtor shall no longer be authorized to use any Cash Collateral thereafter unless ordered otherwise by this Court.

**IT IS FURTHER ORDERED** that the DIP Lender has waived the requirement for a blocked account to be established and utilized by the Debtor so that the Debtor may continue to utilize its existing Debtor-in-Possession checking account.

**IT IS FURTHER ORDERED** that the term of the DIP loan shall be extended from 150

days to 210 days from the date of the entry of the Order approving the Interim DIP loan (May 21,

2010), which causes the DIP loan to mature by its own terms on Friday, December 17, 2010.

**IT IS FURTHER ORDERED** that the Debtor shall set aside and reserve from the DIP

loan the amount of $150,000 to be available, if necessary, to ensure that an effective sales

process could proceed in the event the Debtor is not able to formulate and file a plan within its

120-day exclusivity period provided for by 11 U.S.C. § 1121(b).

**IT IS FURTHER ORDERED** that the Debtor shall provide to the Committee all

information which is required to be provided to the DIP lender under the DIP loan documents, as

and when provided to the DIP lender and that the Committee's counsel shall be provided with all

notices required to be provided to any party under the DIP loan documents.

**IT IS FURTHER ORDERED** that the Debtor shall provide regular reconciliations of

actual expenditures to those projected in the Budget attached hereto, and any subsequent Budget

under which the Debtor is operating, to both counsel to the Committee and to the DIP Lender

and its counsel and that weekly cash reconciliations be made and timely provided (within seven

(7) days from the last day of a weekly budgeted period) to show the Debtor's performance

compared to its previous projections.

**IT IS FURTHER ORDERED** that the Debtor shall consult with and provide prior

notice to counsel for the DIP Lender and the Committee of any amendments to the DIP budgets

or the DIP loan documents prior to the same becoming effective and prior to the filing of any

motion requesting approval of same.

**IT IS FURTHER ORDERED** that if any of the provisions of the Final Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any security interests, liens or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order. The validity and enforceability of all security interests, liens and priorities authorized or created hereby shall survive the conversion of the case to a case under Chapter 7 of the Bankruptcy Code and the dismissal of this case.

**IT IS FURTHER ORDERED** that the provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtor, and their respective successors and assigns.

**IT IS FURTHER ORDERED** that the DIP Lender shall not be deemed to be in control of the operations of the Debtor or be acting as a "responsible person" or "owner" or "operator" with respect to any operations or management of the Debtor (as such terms, or any similar terms, as used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or in any other Federal or state statute) by virtue of entry of this Final Order.

**IT IS FURTHER ORDERED** that no third parties (including creditors of the Debtor) are intended to be or shall be deemed to be third-party beneficiaries of the provisions of this Final Order.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction to resolve issues that arise pursuant to this Final Order.

**IT IS FURTHER ORDERED** that time is of the essence with respect to all performance required by this Final Order.

**IT IS FURTHER ORDERED** that this Final Order shall be effective as of the date of entry.

**IT IS FURTHER ORDERED** that service of a copy of this Final Order shall be made by the Court's Electronic Court Filing system on all parties who have entered a notice of appearance in this case.

**SO ORDERED.**

_____
Neil P. Olack
United States Bankruptcy Judge
Dated:  July 1, 2010

AGREED TO:

                                                    _____
                                                    Douglas C. Noble
                                                    Counsel for the Official
SUBMITTED BY:                                       Committee of Unsecured
Stephen W. Rosenblatt (MB 5676)                     Creditors
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Fax: (601) 985-4500                                 _____
steve.rosenblatt@butlersnow.com                     John D. Moore
                                                    Counsel for the Debtor

     Jackson 5291287v2

- 12 -

# Odyssey Petroleum Corporation

### 13 Week Cash Flow Forecast (For the Period 6/14/10 through 9/12/10)

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Week Number ➡ | | | | | | | |
| Dates of Week ➡ | 6/14 - 6/20 | 6/21 - 6/27 | 6/28 - 7/04 | 7/05 - 7/11 | 7/12 - 7/18 | 7/19 - 7/25 | 7/26 - 8/01 |
| Beg.-Cash on Hand ➡ | $335,000 | $261,960 | $96,335 | $198,660 | $36,835 | ($36,105) | ($132,930) |
| **REVENUES:** | | | | | | | |
| Receipts ( after royalty & taxes pd by Genesis) | $0 | $0 | $315,000 | $0 | $0 | $0 | $400,000 |
| *Less:* | | | | | | | |
| Royalties (Paid by Odyssey) | $0 | $0 | ($50,000) | $0 | $0 | $0 | ($50,000) |
| Royalties (In Arrears) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Total Net Revenue ➡ | $0 | $0 | $265,000 | $0 | $0 | $0 | $350,000 |
| **EXPENSES:** | | | | | | | |
| **Well Expenditures:** | | | | | | | |
| Chemicals | $3,750 | $3,750 | $3,750 | $3,750 | $3,750 | $3,750 | $3,750 |
| Lubricants | $1,000 | $0 | $1,000 | $0 | $1,000 | $0 | $1,000 |
| Diesel & Gas | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| Employee Housing Allowances | $400 | $0 | $0 | $0 | $400 | $0 | $0 |
| Propane | $750 | $750 | $750 | $750 | $750 | $750 | $750 |
| Monthly Land Owner Leases | $1,105 | $0 | $0 | $0 | $1,105 | $0 | $0 |
| Yearly Land Owner Leases | $15,000 | $0 | $0 | $0 | $5,000 | $0 | $0 |
| Field Supplies | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| #1 Workover Rig Lease | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 |
| #2 Workover Rig Lease | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 |
| Swab Rig Lease | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Motor Rentals | $0 | $0 | $20,000 | $0 | $0 | $0 | $20,000 |
| Workover costs - (Barber Creek SWD Well ) | $0 | $0 | $60,000 | $0 | $0 | $0 | $0 |
| Avg workover exp. for services & supplies | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 |
| Total Well expenditures ➡ | $43,005 | $25,500 | $106,500 | $25,500 | $33,005 | $25,500 | $46,500 |
| **S. G. & A. Expenses:** | | | | | | | |
| **Personnel Costs:** | | | | | | | |
| Payroll Expenses | $0 | $43,500 | $0 | $43,500 | $0 | $43,500 | $0 |
| Payroll Taxes and Withholdings | $0 | $12,500 | $0 | $12,500 | $0 | $12,500 | $0 |
| Payroll Auto Allowance | $0 | $750 | $0 | $750 | $0 | $750 | $0 |
| Per Diem | $0 | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 |
| Contract Geologist | $0 | $750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 |
| Contract Petroleum Engineer | $0 | $750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 |
| Contract Financial Consultant | $0 | $0 | $7,200 | $7,200 | $7,200 | $7,200 | $7,200 |
| Dental Insurance | $750 | $0 | $0 | $0 | $750 | $0 | $0 |
| Health Insurance | $5,700 | $0 | $0 | $0 | $5,700 | $0 | $0 |
| Workers Comp | $6,000 | $0 | $0 | $0 | $6,000 | $0 | $0 |
| Total Personnel Costs ➡ | $12,450 | $61,250 | $10,700 | $70,450 | $23,150 | $70,450 | $10,700 |
| **Other S. G. & A. Costs:** | | | | | | | |
| Garbage Pickup | $210 | $0 | $0 | $0 | $210 | $0 | $0 |
| Printing and Reproduction | $100 | $0 | $0 | $0 | $100 | $0 | $0 |
| Rent ( Office) | $0 | $0 | $6,000 | $0 | $0 | $0 | $6,000 |
| Rent ( Shop & 5 acres ) | $0 | $0 | $2,500 | $0 | $0 | $0 | $2,500 |
| Auto Exp/Repairs | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Dues and Subscriptions | $100 | $0 | $0 | $0 | $100 | $0 | $0 |
| Janitorial Service | $500 | $0 | $0 | $0 | $500 | $0 | $0 |
| Postage | $100 | $0 | $0 | $0 | $100 | $0 | $0 |
| Telephone | $0 | $0 | $1,500 | $0 | $0 | $0 | $1,500 |
| Utilities | $800 | $0 | $0 | $0 | $800 | $0 | $800 |
| Travel Expenses | $0 | $0 | $500 | $0 | $0 | $0 | $2,500 |
| Office Supplies | $0 | $0 | $100 | $0 | $0 | $0 | $100 |
| Auto Insurance | $7,300 | $0 | $0 | $0 | $7,300 | $0 | $0 |
| Property Insurance | $1,100 | $0 | $0 | $0 | $1,100 | $0 | $0 |
| Shop Supplies | $125 | $125 | $125 | $125 | $125 | $125 | $125 |
| Gas/Diesel | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Aarvak - Production Payment | $0 | $0 | $7,000 | $0 | $0 | $0 | $7,000 |
| Vehicle notes | $3,500 | $0 | $0 | $0 | $3,500 | $0 | $0 |
| Professional Fees | $0 | $0 | $0 | $60,000 | $0 | $0 | $0 |
| US Trustee Fees | $0 | $0 | $0 | $0 | $0 | $0 | $4,875 |
| Equipment Notes | $3,000 | $0 | $0 | $0 | $3,000 | $0 | $0 |
| Dip Financing Interest | $0 | $0 | $2,000 | $0 | $0 | $0 | $2,000 |
| Total Other S. G. & A. Costs ➡ | $17,585 | $875 | $20,475 | $60,875 | $16,785 | $875 | $28,150 |
| **One Time Fees and Cure Payments:** | | | | | | | |
| Software for Preparation of Marketing Package | $0 | $0 | $0 | $5,000 | $0 | $0 | $0 |
| Dip Financing Fee | $0 | $0 | $25,000 | $0 | $0 | $0 | $0 |
| Reagan Equipment (Cure) | $0 | $15,000 | $0 | $0 | $0 | $0 | $7,500 |
| Thor Engine (Cure) | $0 | $63,000 | $0 | $0 | $0 | $0 | $0 |
| Total One Time Expenditures ➡ | $0 | $78,000 | $25,000 | $5,000 | $0 | $0 | $7,500 |
| Total Well, G & A and One Time Expenditures ➡ | $73,040 | $165,625 | $162,675 | $161,825 | $72,940 | $96,825 | $92,850 |
| Net Cash Flow for the Week ➡ | ($73,040) | ($165,625) | $102,325 | ($161,825) | ($73,940) | ($96,825) | $257,150 |
| Ending -Cash on Hand ➡ | $261,960 | $96,335 | $198,660 | $36,835 | ($36,105) | ($132,930) | $124,220 |



EXHIBIT A

# Odyssey Petroleum Corporation

### 13 Week Cash Flow Forecast (For the Period 6/14/10 through 9/12/10)

| | Week Number ⟹ 8 | 9 | 10 | 11 | 12 | 13 | 13 WEEK |
|---|---|---|---|---|---|---|---|
| | Dates of Week ⟹ 8/02 - 8/08 | 8/09 - 8/15 | 8/16 - 8/22 | 8/23 - 8/29 | 8/30 - 9/05 | 9/06 - 9/12 | TOTAL |
| Beg.-Cash on Hand ⟹ | $124,220 | ($32,605) | ($101,345) | ($196,670) | $79,655 | ($77,170) | |
| **REVENUES:** | | | | | | | |
| Receipts ( after royalty & taxes pd by Genesis) | $0 | $0 | $0 | $400,000 | $0 | $0 | $1,115,000 |
| *Less:* | | | | | | | |
| Royalties (Paid by Odyssey) | $0 | $0 | $0 | ($50,000) | $0 | $0 | ($150,000) |
| Royalties (In Arrears) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Total Net Revenue ⟹ | $0 | $0 | $0 | $350,000 | $0 | $0 | $965,000 |
| **EXPENSES:** | | | | | | | |
| **Well Expenditures:** | | | | | | | |
| Chemicals | $3,750 | $3,750 | $3,750 | $3,750 | $3,750 | $3,750 | $45,000 |
| Lubricants | $3,750 | $1,000 | $0 | $1,000 | $0 | $1,000 | $7,000 |
| Diesel & Gas | $2,500 | $0 | $2,500 | $2,500 | $2,500 | $2,500 | $32,500 |
| Employee Housing Allowances | $0 | $400 | $0 | $0 | $0 | $400 | $1,600 |
| Propane | $750 | $750 | $750 | $750 | $750 | $750 | $9,750 |
| Monthly Land Owner Leases | $0 | $1,105 | $0 | $0 | $0 | $1,105 | $4,420 |
| Yearly Land Owner Leases | $0 | $0 | $0 | $0 | $0 | $0 | $20,000 |
| Field Supplies | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $13,000 |
| #1 Workover Rig Lease | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $81,250 |
| #2 Workover Rig Lease | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $6,250 | $81,250 |
| Swab Rig Lease | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $13,000 |
| Motor Rentals | $0 | $0 | $0 | $20,000 | $0 | $0 | $60,000 |
| Workover costs - (Barber Creek SWD Well ) | $0 | $0 | $0 | $0 | $0 | $0 | $60,000 |
| Avg workover exp. for services & supplies | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $52,000 |
| Total Well expenditures ⟹ | $25,500 | $28,005 | $25,500 | $46,500 | $25,500 | $28,005 | $480,770 |
| **S. G. & A. Expenses:** | | | | | | | |
| **Personnel Costs:** | | | | | | | |
| Payroll Expenses | $43,500 | $0 | $43,500 | $0 | $43,500 | $0 | $261,000 |
| Payroll Taxes and Withholdings | $12,500 | $0 | $12,500 | $0 | $12,500 | $0 | $75,000 |
| Payroll Auto Allowance | $750 | $0 | $750 | $0 | $750 | $0 | $4,500 |
| Per Diem | $3,000 | $0 | $3,000 | $0 | $3,000 | $0 | $18,000 |
| Contract Geologist | $1,750 | $1,750 | $1,000 | $750 | $750 | $750 | $16,250 |
| Contract Petroleum Engineer | $1,750 | $1,750 | $1,000 | $750 | $750 | $750 | $16,250 |
| Contract Financial Consultant | $7,200 | $7,200 | $7,200 | $7,200 | $7,200 | $7,200 | $79,200 |
| Dental Insurance | $0 | $750 | $0 | $0 | $0 | $750 | $2,250 |
| Health Insurance | $0 | $5,700 | $0 | $0 | $0 | $5,700 | $17,100 |
| Workers Comp | $0 | $6,000 | $0 | $0 | $0 | $6,000 | $18,000 |
| Total Personnel Costs ⟹ | $70,450 | $23,150 | $68,950 | $8,700 | $68,450 | $21,150 | $507,550 |
| **Other S. G. & A. Costs:** | | | | | | | |
| Garbage Pickup | $0 | $210 | $0 | $0 | $0 | $210 | $630 |
| Printing and Reproduction | $0 | $100 | $0 | $0 | $0 | $0 | $300 |
| Rent ( Office) | $0 | $0 | $0 | $6,000 | $0 | $0 | $18,000 |
| Rent ( Shop & 5 acres ) | $0 | $0 | $0 | $2,500 | $0 | $0 | $7,500 |
| Auto Exp/Repairs | $500 | $500 | $500 | $500 | $500 | $500 | $6,500 |
| Dues and Subscriptions | $0 | $100 | $0 | $0 | $0 | $0 | $300 |
| Janitorial Service | $0 | $500 | $0 | $0 | $0 | $0 | $1,500 |
| Postage | $0 | $100 | $0 | $0 | $0 | $0 | $300 |
| Telephone | $0 | $0 | $0 | $1,500 | $0 | $0 | $4,500 |
| Utilities | $0 | $800 | $0 | $0 | $0 | $0 | $2,400 |
| Travel Expenses | $0 | $0 | $0 | $500 | $0 | $0 | $3,500 |
| Office Supplies | $0 | $0 | $0 | $100 | $0 | $0 | $300 |
| Auto Insurance | $0 | $7,300 | $0 | $0 | $0 | $0 | $21,900 |
| Property Insurance | $0 | $1,100 | $0 | $0 | $0 | $0 | $3,300 |
| Shop Supplies | $125 | $125 | $125 | $125 | $125 | $125 | $1,625 |
| Gas/Diesel | $250 | $250 | $250 | $250 | $250 | $250 | $3,250 |
| Aarvak - Production Payment | $0 | $0 | $0 | $7,000 | $0 | $0 | $21,000 |
| Vehicle notes | $0 | $3,500 | $0 | $0 | $0 | $0 | $10,500 |
| Professional Fees | $60,000 | $0 | $0 | $0 | $60,000 | $0 | $180,000 |
| US Trustee Fees | $0 | $0 | $0 | $0 | $0 | $0 | $4,875 |
| Equipment Notes | $0 | $3,000 | $0 | $0 | $0 | $0 | $9,000 |
| Dip Financing Interest | $0 | $0 | $0 | $0 | $2,000 | $0 | $6,000 |
| Total Other S. G. & A. Costs ⟹ | $60,875 | $17,585 | $875 | $18,475 | $62,875 | $1,085 | $307,180 |
| **One Time Fees and Cure Payments:** | | | | | | | |
| Software for Preparation of Marketing Package | $0 | $0 | $0 | $0 | $0 | $0 | $5,000 |
| Dip Financing Fee | $0 | $0 | $0 | $0 | $0 | $0 | $25,000 |
| Reagan Equipment (Cure) | $0 | $0 | $0 | $0 | $0 | $0 | $22,500 |
| Thor Engine (Cure) | $0 | $0 | $0 | $0 | $0 | $0 | $63,000 |
| Total One Time Expenditures ⟹ | $0 | $0 | $0 | $0 | $0 | $0 | $115,500 |
| Total Well, G & A and One Time Expenditures ⟹ | $156,825 | $68,740 | $95,325 | $73,675 | $156,825 | $50,240 | $1,411,000 |
| Net Cash Flow for the Week ⟹ | ($156,825) | ($68,740) | ($95,325) | $276,325 | ($156,825) | ($50,240) | ($462,410) |
| Ending -Cash on Hand ⟹ | ($32,605) | ($101,345) | ($196,670) | $79,655 | ($77,170) | ($127,410) | |