**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

In re:

      **ODYSSEY PETROLEUM CORP. (US),**         **CASE NO. 10-01482-NPO**
                                         **Chapter 11**
           **Debtor.**

## THIRD AMENDED JOINT CHAPTER 11 PLAN

This ***Third Amended Joint Chapter 11 Plan*** is proposed and submitted on June 7, 2011 by Odyssey Petroleum Corp. (US), the Debtor and debtor-in-possession herein (the "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Committee**").

### INTRODUCTION

The Debtor and the Committee propose this *Third Amended Joint Chapter 11 Plan* (the "Plan").

This Plan is predicated and contingent upon (a) the closing of the Sale Transaction and (b) implementation of the Committee Settlement and the Parent/Pansano Settlement. This Plan was prepared and submitted with anticipation that such Sale Transaction will close and that the agreements between and among the numerous parties to the Committee Settlement and Parent/Pansano Settlement are valid, binding and enforceable and will be implemented. If the Sale Transaction does not close, or if the Committee Settlement or Parent/Pansano Settlement are not implemented for any reason, the Plan may be withdrawn by the Debtor or the Committee.

**ALL CREDITORS ARE ENCOURAGED TO CONSULT THE ACCOMPANYING DISCLOSURE STATEMENT.**

### ARTICLE I
### DEFINITIONS

**A.**    **_Definitions_.**  **Unless the context requires otherwise, for purposes of this Plan and any subsequent amendments or modifications hereof, the following words and phrases will have the meaning set forth below when used in initially-capitalized form, and any term herein that is defined in the Bankruptcy Code, but not otherwise defined herein, will have the meaning set forth in the Bankruptcy Code:**

1.1    "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Bankruptcy Case allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Bankruptcy Case,

and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including without limitation, any fees or charges assessed against the bankruptcy estate under 28 U.S.C. § 1930.

1.2    "**Allowed**" means, with reference to any Claim against the Debtor, (a) any Claim against the Debtor that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of Claim either (i) as to which no objection has been or is interposed by the Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim; (c) any Claim expressly allowed by a Final Order or under the Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims."

1.3    "**Bankruptcy Case**" means the bankruptcy case which the Debtor commenced with a voluntary petition under Chapter 11 on April 23, 2010, and which is pending in this Court in the case styled "*In re: Odyssey Petroleum Corp. (US)*; Case No. 10-01482-NPO."

1.4    "**Bankruptcy Code**" means Title 11 of the United States Code, sometimes cited as 11 U.S.C. §101 et seq., and sometimes referred to herein as the "Code."

1.5    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Bankruptcy Case and all adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over this Bankruptcy Case.

1.6    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from time to time.

1.7    "**Bar Date**" means the deadlines by which a Proof of Claim was required to be filed with the Clerk of the Bankruptcy Court. The first such deadlines were July 9, 2010 for all creditors except a Governmental Unit, and November 1, 2010 for all Governmental Units, each as established by that certain *Order Setting the Final Date for Filing Proofs of Claim* [Dkt # 31] dated May 5, 2010, and distributed to creditors pursuant to the *Notice to Creditors Added to Debtor's Creditor List/Matrix* [Dkt. #37] and the *BNC Certificate of Mailing* [Dkt. #41], both of which are dated May 7, 2010. The second such deadlines were September 2, 2010, for all creditors identified in that certain *Amended Notice to Creditors Added to Debtor(s) Creditor List/Matrix/Schedules* [Dkt. #163] dated August 3, 2010; and April 14, 2011, for all creditors identified in that certain *Amended Notice of Amended Schedules and Creditor List/Matrix* [Dkt. #509] dated March 15, 2011.

1.8    "**Business Day**" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9    "**Buyer**" means the Successful Bidder resulting from the Auction scheduled for June 10, 2011, at 9:00 a.m., and ultimately approved by the Court.

1.10    "**Chapter 5 Causes of Action**" means Causes of Action of the Debtor arising under Chapter 5 of the Bankruptcy Code.  Any recoveries obtained as a result of the prosecution or settlement of a Chapter 5 Cause of Action will be deposited into the Escrow Accounts.

1.11    "**Chief Restructuring Officer**" or "**CRO**" means Charles S. Deutchman and Shared Management Resources, Ltd., whose retention was approved by the Bankruptcy Court pursuant to that certain *Order Authorizing Debtor-in-Possession to Employ Chief Restructuring Officer* [Dkt. #123], and whose duties and authority with respect to the operation of the Debtor's business was expanded pursuant to that certain *Final Order Granting Debtor's Amended Application for Authority to Employ and Retain Shared Management Resources and Charles Deutchman as Chief Restructuring Officer* [Dkt. #351].

1.12    "**Claim**" has the meaning set forth in Section 101(5) of the Bankruptcy Code with respect to any Claim asserted against the Debtor.

1.13    "**Claimant**" means the holder of a Claim against the Debtor.

1.14    "**Class**" means the category of holders of Claims against or Interests in the Debtor that are substantially similar to other Claims or Interests in such class, which category has been segregated for treatment as part of this Plan pursuant to Section 1122 of the Bankruptcy Code.

1.15    "**Closing Date**" means the date that the Debtor receives Sale Proceeds from the sale of the Debtor's assets pursuant to a Sale Transaction.

1.16    "**Collateral**" means any property or interest in property of the estate of the Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.17    "**Committee**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in this Bankruptcy Case on June 3, 2010 [Dkt. #74] pursuant to Section 1102(a) of the Bankruptcy Code.

1.18    "**Committee Settlement**" means the *Settlement Agreement* between and among the Debtor, the Parent, the Committee, and the Baker Entities (defined as Baker Hughes, Inc., Baker Petrolite Corporation and BJ Services Company U.S.A.), a copy of which is attached hereto as Exhibit "A". [Dkt # 621-2].

1.19    "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.20    "**Confirmation Hearing**" means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    "**Confirmation Order**" means the order or orders of the Bankruptcy Court, confirming the Plan.

1.22    "**Contract Operator**" means Spooner Petroleum Company, the contract operator for the Debtor, whose retention by the Debtor was approved by that certain *Order Authorizing Debtor-in-Possession to Employ and Retain Spooner Petroleum Company as Contract Operator* [Dkt. #370].

1.23    "**Covered Parties**" means (a) CRO and all of the present employees of the Debtor, and any employees or Professionals of the Debtor whose retention has been approved by the Bankruptcy Court, including the Contract Operator and its employees, before or after the Petition Date through and including the Effective Date, and (b) the Committee and any of its present or former members, present or former members' attorneys, advisors, attorneys and Professionals or other representatives, before or after the Petition Date through and including the later of the Effective Date, or the date upon which the Committee is discharged.

1.24    "**Creditor**" is defined in Section 101(9) of the Bankruptcy Code and is the holder of one or more Claims against the Debtor.

1.25    "**Debtor**" means Odyssey Petroleum Corp. (US), the Debtor and Debtor-in-Possession in this Bankruptcy Case.

1.26    "**Debtor-in-Possession**" means the Debtor in its capacity as debtor-in-possession in the Bankruptcy Case under Sections 1107(a) and 1108 of the Bankruptcy Code.

1.27    "**Disclosure Statement**" means that certain disclosure statement approved by the Bankruptcy Court as containing adequate information concerning the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.28    "**Disputed**" means, with respect to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under Section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, and except as otherwise provided in the Committee Settlement and/or the Parent/Pansano Settlement, a Claim will be considered Disputed to the extent that the amount of the Claim specified in a

proof of claim exceeds the amount of the Claim scheduled by the Debtor as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

1.29   "**Effective Date**" means a Business Day selected by the Debtor on or after the Confirmation Date, but not later than thirty (30) days after the Confirmation Order becomes a Final Order, on which (a) no stay of the Confirmation Order is in effect, and (b) the conditions precedent to the effectiveness of the Plan will have been satisfied or waived as discussed in Article XI hereof.

1.30   "**Estate Escrow**" means the designated bank account holding the Net Sale Proceeds derived from the Sale Transaction, except for the portion of the Net Sale Proceeds which are to be deposited in the Unsecured Escrow pursuant to Paragraph A of the Committee Settlement.

1.31   "**Escrow Accounts**" means the Estate Escrow and the Unsecured Escrow.

1.32   "**Executory Contract**" means any executory contract of the Debtor as such term is used in Section 365 of the Bankruptcy Code, which has not been previously assumed or rejected during the Bankruptcy Case.

1.33   "**Final Order**" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing is then pending; or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, (i) such order or judgment has been affirmed by the highest court to which such order was appealed, certiorari has been denied or a new trial, re-argument or rehearing will have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order will not prevent such order from being a Final Order.

1.34   "**General Unsecured Claim**" means, other than Subordinated Unsecured Claims and Interests, any Claim for which no property of the Debtor or the Debtor's estate serves as security or Collateral, and it also includes that portion of an Undersecured Claim in excess of the value of the Collateral securing the Claim.  It also consists of the Claims for unsecured debts, liabilities, and demands or any character whatsoever owed by the Debtor, including, without limitation, all Claims noted on the Schedules filed herein, all amendments hereto, and all Claims by persons having actual and/or constructive notice or knowledge of this Bankruptcy Case.

1.35   "**Impaired**" means with respect to any Class of Claims or Interests, that the rights of the Claimants in such Class are deemed impaired under Section 1124 of the Bankruptcy Code.

1.36   "**Interest**" means the legal, equitable and contractual rights of the owner or holder of an equity interest in the Debtor.  The sole owner and holder of an equity interest in the Debtor is Parent.

1.37    "**Lease**" means any unexpired lease of the Debtor as such term is used in Section 365 of the Bankruptcy Code, which has not been previously assumed or rejected during the Bankruptcy Case.

1.38    "**Liquidating Agent**" means Charles S. Deutchman, the Chief Restructuring Officer of the Debtor.

1.39    "**Net Sale Proceeds**" means the amount of funds deposited into the Estate Escrow and the Unsecured Escrow upon the closing of the Sale Transaction, which will be the Sale Proceeds less amounts disbursed upon the closing of the Sale Transaction pursuant to the Sale Order.

1.40    "**Other Priority Claims**" means a Priority Claim that is not a Priority Tax Claim.

1.41    "**Parent/Pansano Settlement**" means the *Settlement Agreement* between and among the Debtor, the Parent, and the "Pansano Entities" (as defined therein), a copy of which is attached hereto as Exhibit B. [Dkt # 621-1].

1.42    "**Parent**" means Petrichor Energy, Inc., formerly known as Odyssey Petroleum Corp., a corporation organized and existing under the laws of British Columbia, Canada (current trading symbol "PTP" on the Toronto Venture Exchange), the sole owner and holder of the Interest in the Debtor.

1.43    "**Petition Date**" means April 23, 2010, which is the date the Debtor filed its Chapter 11 Petition for Relief under Chapter 11 of the Bankruptcy Code.

1.44    "**Plan**" means this *Third Amended Joint Chapter 11 Plan*, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.45    "**Priority Claim**" means a Claim entitled to priority in payment as specified in Section 507(a)(1)-(10) of the Bankruptcy Code.

1.46    "**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.47    "**Professionals**" means the professionals retained by the Debtor or the Committee, the retention of whom has been approved by the Bankruptcy Court, and any other professionals that are authorized to be compensated from the estate by Final Order of the Bankruptcy Court

1.48    "**Property of the Estate**" is defined in Section 541 of the Bankruptcy Code.

1.49    "**Purchase Price**" means the total consideration paid by the Buyer to the Debtor in connection with the Sale Transaction.

1.50    "**Royalty Cure Claim**" means the Claims of those lessors of oil and gas leases which are the subject of the *Final Order Resolving Cure Amounts/Arrearages Related to Debtor in Possession's First and Second Omnibus Motions to Assume Unexpired Non-Residential Real Estate Leases, or in the Alternative, to Determine that the Oil and Gas Leases are Not "Leases" Subject to the Requirements of Section 365(d)(4)* [Dkt # 519].

1.51    "**Sale Motion**" means that certain *Motion to Approve (I) Sale of Assets of Estate Free and Clear of Interests; (II) Assumption and Assignment of Certain Unexpired Leases and Executory Contracts; and (III) Compromise and Settlement of Claims* [Dkt. #591] filed with the Bankruptcy Court on May 6, 2011, seeking the approval of the Sale Transaction by the Bankruptcy Court.

1.52    "**Sale Order**" means that certain Final Order granting the Sale Motion, which authorizes the Debtor to sell certain assets to the Buyer.

1.53    "**Sale Proceeds**" means the cash portion of the Purchase Price.

1.54    "**Sale Transaction**" means the sale of substantially all of the assets of the Debtor to the Buyer for the Purchase Price, pursuant to the Sale Motion and the Sale Order.

1.55    "**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Case, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.56    "**Secured Claim**" means any Claim that is secured by a lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.57    "**Subordinated Unsecured Claim**" means those Allowed unsecured Claims outlined in the Parent/Pansano Settlement.

1.58    "**Unimpaired**" means, as to any Class of Claims or Interests, that the rights of the Claimants in such Class are not Impaired.

1.59    "**Unliquidated Claim**" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.60    "**Unsecured Claim**" means any Claim that is not secured by a lien on Collateral, or, to the extent the Debt exceeds the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent the Debt exceeds the amount of such permissible setoff.

1.61    "**Unsecured Escrow**" means the separate escrow account established pursuant to Paragraph A of the Committee Settlement, to be funded on the Closing Date from Net Sale Proceeds, and to be used to pay Class 5 Claims on the Effective Date.

B.    *Interpretation; Application of Definitions and Rules of Construction*.    Unless the context of this Plan otherwise requires: (a) words of any gender are deemed to include the other gender; (b) words using the singular or plural number also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby," "hereto," and derivative or similar words refer to this entire Agreement; (d) the term "including" and other forms of such term, with respect to any matter or thing, means "including but not limited to" such matter or thing; and (e) all references to "dollars" or "$" refer to currency of the United States.

## ARTICLE II
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

2.1    **Administrative Expense Claims**.    Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim will receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date or the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.    Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor-in-Possession will be paid in full on the Effective Date.

(a)    United States Trustee Fees.    With respect to amounts due to the Office of the United States Trustee, the Debtor will pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) within ten (10) days of the Effective Date.    The Debtor will timely pay to the United States Trustee any and all post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the court.    Additionally, the Debtor will submit to the United States Trustee post-confirmation quarterly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.    At this time, the Debtor is current on these fees owed to the United States Trustee.

(b)    Previously Unpaid Administrative Expense Claims.    All requests for the payment of previously unpaid Administrative Expense Claims, including without limitation final applications of Professionals for payment of fees and reimbursement of expenses, will be filed with the Bankruptcy Court no later than sixty (60) days after the final disbursement of funds to all Creditors or such other date as may be fixed by the Bankruptcy Court, otherwise such unpaid Administrative Expense Claims will be waived, discharged and forever barred.

2.2    **Priority Tax Claims**.    Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim will receive on the Effective Date, cash in an amount equal to such Allowed Priority Tax Claim.    All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date will be

paid in the ordinary course of business as such obligations become due.  To the extent any Allowed Priority Tax Claim is not so paid, it  will be paid in full upon confirmation of the Plan, pursuant to 11 U.S.C. § 1129(a)(9)(A), on the Effective Date.

      2.3    **Indemnification of Chief Restructuring Officer**.  Pursuant to that certain *Final Order Granting Debtor's Amended Application for Authority to Employ and Retain Shared Management resources and Charles Deutchman as Chief Restructuring Officer* [Dkt. #351], the Debtor agreed to indemnify and hold harmless the Chief Restructuring Officer, and to incorporate such provisions in this Plan, as follows:

> The Debtor will indemnify and hold harmless CRO against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements, as and when incurred, of investigating, preparing or defending any action, suit, proceeding or investigation (whether or not in connection with proceedings or litigation in which CRO is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the discharge of CRO's duties; unless there is a final non-appealable order of a Court of competent jurisdiction, at the trial level, finding CRO directly liable for gross negligence or willful misconduct.  These indemnification provisions extend to the employees, representatives, agents and counsel of CRO.

> Neither the CRO, nor its personnel will be liable to the Debtor for any claims, liabilities or expense relating to this retention in excess of the fees paid by the Debtor to CRO, unless there is a final non-appealable order of a Court of competent jurisdiction, at the trial level, finding CRO directly liable for gross negligence or willful misconduct.  In no event will CRO or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damages or expenses relating to this retention.  These limitations on liability provisions extend to the employees, representatives, agents and counsel of CRO; and will survive the completion or termination of this retention.

> Any Disclosure Statement and/or Plan of Reorganization filed in this case (including the Disclosure Statement for First Amended Joint Plan of Reorganization and First Amended Joint Plan of Reorganization filed with this Court on October 4, 2010) will include the assumption of the indemnification obligations and limitations set forth herein by the Reorganized Debtor under any Plan.  It being understood that the assumption of indemnity obligations and limitations by the Reorganized Debtor is a material inducement to CRO to assume the expanded duties hereunder.

Such indemnity and hold harmless obligations are assumed hereby and, in the event any claim is made against the Chief Restructuring Officer in connection with the discharge of his duties as the Chief Restructuring Officer for the Debtor, the indemnification of the Chief Restructuring Officer with respect to such claim(s) will be treated as Administrative Expense Claims if timely filed pursuant to the terms hereof.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS**

3.1    **Classification of Claims**.  The following table designates the Classes of Claims against and Interest in the Debtor, and specifies which of those Classes are Impaired or Unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Parent Secured Claim | Unimpaired | No (deemed to accept) |
| 4 | Royalty Cure Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 6 | Subordinated Unsecured Claims | Unimpaired | No (deemed to accept) |
| 7 | Interest | Unimpaired | No (deemed to accept) |

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

4.1    **Other Priority Claims (Class 1)**.

(a)    Treatment.  On the Effective Date, all Other Priority Claims that are or become Allowed Other Priority Claims will be paid in full in Cash on the later of (i) the Effective Date, or (ii) the date on which the Other Priority Claim becomes an Allowed Other Priority Claim in full and final satisfaction of, and in exchange for, such Allowed Other Priority Claim.

(b)    Impairment and Voting.  Class 1 is Unimpaired and the holders of Claims in this Class are not entitled to vote to accept or reject the Plan.

4.2    **Secured Claims (Class 2)**.

(a)    Treatment.  Class 2 Secured Claims are Allowed Secured Claims only to the extent that such Creditor has a non-avoidable lien on Property of the Estate and only to the extent of the value of such Creditor's interest in Property of the Estate, as provided by Section 506(a) of the Bankruptcy Code.  Notwithstanding the foregoing, the Secured Claims addressed in the Parent/Pansano Settlement, will be Allowed in the amounts set forth therein.  If the Debtor transferred the Collateral securing an Allowed Class 2 Secured Claim to the Buyer in the Sale Transaction, then such Allowed Class 2 Secured Claim will be paid in full in cash on the Closing Date or as soon thereafter as is commercially reasonable

-10-

(b)    Impairment and Voting.  Class 2 is Unimpaired and the holders of Claims in this Class are not entitled to vote to accept or reject the Plan.

4.3    **Parent Secured Claim (Class 3)**.

(a)    Treatment.       The holder of the Class 3 Parent Secured Claim will be paid in full the Allowed amount of its claim on the Closing Date; provided, however, that the Parent has directed the Buyer or a closing attorney to pay, on the Parent's behalf, the compromised and liquidated amount of $1,500.000.00 to Trafalgar Capital Specialized Investment Fund, FIS ("Trafalgar") on the Closing Date in accordance with the provisions of the *Agreement Regarding Loan Restructuring* [Dkt # 591-4] and the Parent/Pansano Settlement.  To the extent that the Committee Settlement and the Parent/Pansano Settlement require approval through the Plan pursuant to Fed. R. Bankr. P. 9019, because the parties thereto have entered into binding agreements as contained in such settlement agreements upon which the Sale Motion, Sale Transaction and this Plan are founded, the Plan shall constitute such a request.

(b)    Impairment and Voting.  Class 3 is Unimpaired and the holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan.

4.4    **Royalty Cure Claims (Class 4)**.

(a)    Treatment.  Each holder of an Allowed Class 4 Royalty Cure Claim will receive on the Closing Date, or as soon thereafter as commercially reasonable, full payment of its Allowed Claim pursuant to the *Final Order Resolving Cure Amounts/Arrearages Related to Debtor in Possession's First and Second Omnibus Motions to Assume Unexpired Non-Residential Real Estate Leases, or in the Alternative, to Determine that the Oil and Gas Leases are not "Leases" Subject to the Requirements of Section 365(d)(4)* [Dkt # 519].

(b)    Impairment and Voting.  Class 4 is Unimpaired and the holders of Claims in this Class are not entitled to vote to accept or reject the Plan.

4.5    **General Unsecured Claims (Class 5)**.

(a)    Treatment.  Each holder of an Allowed Class 5 General Unsecured Claim will receive the full Allowed amount of its Claim plus 10% of the full Allowed Amount of its Claim, paid in cash on the Effective Date pursuant to the terms of, and as set forth in, the Committee Settlement.  Any General Unsecured Claim resulting from rejection of a Lease or Executory Contract or which is otherwise a Disputed Claim on or after the Effective Date, will be paid within thirty days from the date that it becomes Allowed.  To the extent that the Committee Settlement and the Parent/Pansano Settlement require approval through the Plan pursuant to Fed. R. Bankr. P. 9019, because the parties thereto have entered into binding agreements as contained in such settlement agreements upon which the Sale Motion, Sale Transaction and this Plan are founded, the Plan shall constitute such a request.

(b)    Impairment and Voting.  Class 5 is Unimpaired and holders of Claims in this Class are not entitled to vote to accept or reject the Plan.

4.6 **Subordinated Unsecured Claims (Class 6)**.

(a)   Treatment.     Each holder of an Allowed Class 6 Subordinated Unsecured Claim will receive the agreed, compromised and liquidated Allowed amount of its Claim pursuant to the terms of the Pansano/Parent Settlement to be paid in cash only after all Class 5 Claims are paid in full.

(b)   Impairment and Voting.   Class 6 is Unimpaired and holders of Claims in this Class are not entitled to vote to accept or reject the Plan.

4.7 **Interest (Class 7)**.

(a)   Treatment.   The Parent, the sole holder of the Interest in the Debtor, will receive on account of such Interest, after payment of all Priority Tax Claims and all Claims in Classes 1 through 6, inclusively, and payment of all costs of administration and liquidation of the Estate, the Net Sale Proceeds and all other proceeds from the liquidation of Property of the Estate as agreed in the Parent/Pansano Settlement.

(b)   Impairment and Voting.   Class 7 is Unimpaired and conclusively presumed to accept the Plan.

## ARTICLE V
## PLAN IMPLEMENTATION AND EXECUTION

5.1   **Sources of Payments**.   The sources of payments by which the Plan will be funded is money to be deposited into the Escrow Accounts which represent the Net Sale Proceeds plus any other proceeds from the liquidation of Property of the Estate.  All payments made under the Plan will be made by the Liquidating Agent from the Escrow Accounts.

5.2   **Escrow Accounts**.  Pursuant to the Sale Order, the Debtor will place the Net Sale Proceeds in the Escrow Accounts, as more specifically discussed in Article I hereof, which moneys, except as set forth in the Sale Order, will be disbursed only pursuant to a confirmed Chapter 11 Plan or other Order of the Court.  Distributions under this Plan will be made by the Liquidating Agent from the Escrow Accounts.

5.3   **The Liquidating Agent**.

(a)   Appointment of the Liquidating Agent.  As of the Effective Date, the appointment of the Liquidating Agent will be effective, and the Liquidating Agent will be vested with full legal power, capacity and authority, and will be directed to administer, collect and liquidate the Debtor's remaining assets and to implement the Plan.   The Liquidating Agent has been designated by the Debtor and the Committee in the Plan and approved by the Bankruptcy Court in the Confirmation Order, and will serve without bond, unless otherwise ordered by the Bankruptcy Court.

(b)   Powers of the Liquidating Agent.  The Liquidating Agent will have, on and after the Effective Date, the necessary power and authority to act for and on behalf of the Debtor, to implement and execute this Plan for the benefit of the holders of Allowed Claims against and

Interests in the Debtor, subject to the continued jurisdiction of the Bankruptcy Court.  On the Effective Date, the current officers and directors of the Debtor will be deemed to have resigned and will be fully discharged from their responsibilities and duties as officers and directors of the Debtor.  In general, and subject to the protective provisions in the Plan, the Liquidating Agent will act for the Debtor and the bankruptcy estate in a fiduciary capacity.

      (c)      <u>Powers and Authority of Liquidating Agent</u>. The Liquidating Agent will be empowered and authorized, among other things, to:

      (1)      Retain and/or employ Professionals;

      (2)      Calculate and make all distributions to be made under this Plan to Creditors holding Allowed Claims and Interests;

      (3)      Exercise all powers and authority that may be exercised by any officer, director or holder of an Interest in the Debtor with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors or holders of an Interest in the Debtor, including, without limitation, dissolving the Debtor;

      (4)      Analyze and investigate Claims;

      (5)      Pursue objections to, and estimations and settlements of Claims;

      (6)      Pursue Chapter 5 Causes of Action in accordance with his reasonable business judgment;

      (7)      Negotiate, settle or otherwise compromise Claims or Chapter 5 Causes of Action, in each case in accordance with Bankruptcy Rule 9019;

      (8)       Serve as the Debtor's representative in any hearing in the Bankruptcy Court;

      (9)      Take actions on behalf of the Debtor as reasonably requested by the Buyer to effectuate the Sale Transaction pursuant to the Sale Order;

      (10)      Assist the Buyer in the prosecution any Cause of Action purchased from the Debtor in the Sale Transaction;

      (11)      File all required tax returns and pay taxes and all other obligations on behalf of the Debtor;

      (12)      File required operating reports;

      (13)      Take all other actions required under the Plan to complete the liquidation, dissolution and wind-up of the Debtor in accordance with applicable non-bankruptcy law and the Plan; and/or

(14)   Take any and all necessary actions in furtherance of or in connection with the foregoing.

(d)   <u>Compensation of the Liquidating Agent and the Liquidating Agent's Professionals</u>.   The Liquidating Agent will employ and compensate Professionals and be compensated at his discretion and without notice or approval of the Court.

(e)   <u>Maintenance of Reserves</u>.   The Liquidating Agent will maintain appropriate reserves to fund pre-confirmation Administrative Expense Claims, post-confirmation administrative expenses, and operating expenses during the implementation of the Plan.   The Liquidating Agent will establish the level of such reserves in consultation with the Liquidating Agent's Professionals.

(f)   <u>Execution of Documents</u>.   The Liquidating Agent, on behalf of the Debtor, may execute any and all documents and instruments necessary to effectuate the provisions of this Plan.

(g)   <u>Indemnification; Hold Harmless</u>.   The Debtor will indemnify and hold harmless the Liquidating Agent and his professionals against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements, as and when incurred, of investigating, preparing or defending any action, suit, proceeding or investigation (whether or not in connection with proceedings or litigation in which the Liquidating Agent or his professionals are a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the discharge of the Liquidating Agent's or his professionals' duties, unless there is a final non-appealable order of the Bankruptcy Court finding the Liquidating Agent directly liable for gross negligence or willful misconduct.   These indemnification provisions extend to the employees, representatives, agents and Professionals of the Liquidating Agent.   Neither the Liquidating Agent, nor his employees, representatives, agents and Professionals will be liable to the Debtor for any claims, liabilities or expenses relating to this retention in excess of the fees paid by the Debtor to the Liquidating Agent, unless there is a final non-appealable order of the Bankruptcy Court finding the Liquidating Agent directly liable for gross negligence or willful misconduct.   In no event will the Liquidating Agent or his employees, representatives, agents and Professionals be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damages or expenses relating to this retention.   These limitations on liability will survive the completion or termination of this retention.

**ARTICLE VI
FEASIBILITY OF THE PLAN**

6.1   **Feasibility**.   Upon the closing of the Sale Transaction, the Debtor will have sufficient funds in the Escrow Accounts to pay the Administrative Expense Claims, Priority Tax Claims, and all other Classes of Claims in full and make significant distributions of cash to the Interest holder.   Accordingly, there is no feasibility issue.

## ARTICLE VII
## PROVISIONS GOVERNING VOTING

7.1     **Voting**.  All Classes of Claims and Interests under the Plan are conclusively deemed to accept the Plan; therefore, no Class is entitled to vote to accept or reject the Plan.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     **Distributions on Account of Allowed Claims**.  The Liquidating Agent, on behalf of the Debtor, will make distributions with respect to Allowed Claims on the earlier of, as applicable, the Closing Date, the Effective Date, or the date that such Claim becomes Allowed.

8.2     **Timing of Distributions**.  The Liquidating Agent will make an initial distribution of cash to the holders of Allowed Claims who are entitled to disbursement on the Closing Date from the Escrow Accounts or direct that the closing attorney make such distribution from the Sales Proceeds.

8.3     **Interim Distributions**.  Pursuant to Bankruptcy Code §§ 105, 502, 521, 1142 and 1143 and Bankruptcy Rules 3001, 3002, 3003 and 3007, the Liquidating Agent is authorized to make interim distributions to holders of Allowed Unsecured Claims, but not to make any interim distribution to the holders of any Unsecured Claims to which an objection has been filed.

8.4     **Establishment of Reserves and Holdbacks for Disputed Claims**.  In the event the Liquidating Agent elects to make interim distributions to holders of Allowed Unsecured Claims, the Liquidating Agent will establish a reserve and holdback in a sufficient amount to provide for: (i) a sufficient amount for any Disputed Claim that subsequently may become an Allowed Claim so there will be no prejudice to any holder of any Disputed Claim by any such partial distribution; and (ii) reasonably anticipated future costs of administration pursuant to section 5.4(e) of this Plan.

8.5     **Final Distribution**.  After all of the Debtor's assets and property have been liquidated and all amounts collected thereon so that no Disputed Claims exist and all post-Effective Date expenses have been paid, the Liquidating Agent will make his final distribution.

8.6     **Distributions Pending Allowance**.  Notwithstanding any other provision of this Plan, if any Claim or any portion of a Claim is Disputed, no payment or distribution provided in the Plan will be made on account of such Claim unless and until the Disputed Claim is resolved and becomes an Allowed Claim.  The Liquidating Agent may estimate an amount to which a Disputed Claim may be Allowed, and may reserve from any distribution such amounts as the Liquidating Agent deems necessary and appropriate.

8.7     **Direction to Liquidating Agent after Final Distribution**.  In the event any amount remains in the Escrow Accounts following the final distribution to the holders of all Allowed Claims, then the Liquidating Agent will remit such remaining amount to the Class 7 Interest holder and will be discharged from his duties hereunder upon the closing of the Bankruptcy Case.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

9.1     **Administration of Claims; Objections to Claims**.

(a)     The Liquidating Agent, on behalf of the Debtor, will file objections to any Claims, or continue to prosecute any objections filed prior to and remaining unresolved on the Effective Date, asserted against the Debtor's estate and deemed by the Liquidating Agent to be improper, inaccurate or otherwise not qualified to be fully Allowed. The Liquidating Agent, in the exercise of his best business judgment, may elect to preserve, abandon, settle, compromise or litigate any Claim filed or otherwise asserted herein. If there is disagreement with the election made by the Liquidating Agent, the Bankruptcy Court shall hear and determine such election after motion, notice and a hearing.

(b)     The Liquidating Agent, on behalf of the Debtor, will only object to the Claims of those Creditors as outlined in the *Amended Motion to Approve Compromise and Settlement of Claims* [Dkt # 621] and the attachments thereto, provided that such Amended Motion is approved.

9.2     **Objection Deadline**. On or before the date that is ninety (90) days after the Effective Date, unless otherwise extended by the Bankruptcy Court, objections to Claims will be filed with the Bankruptcy Court and served upon the holders of each Claim to which objection is made.

9.3     **Determination by Bankruptcy Court**. The amount of any Disputed Claim, and the rights, if any, of the holder of such Claim to payment, will be determined by the Bankruptcy Court, unless it otherwise becomes an Allowed Claim prior to such determination by agreement or otherwise.

9.4     **Treatment of Disputed Claims**. Cash will be distributed by the Liquidating Agent to a holder of any type of Disputed Claim when, and only to the extent that, such Disputed Claim becomes an Allowed Claim pursuant to a Final Order or agreed resolution between the Liquidating Agent and the holder of said Claim. Such distributions will be made from the Escrow Accounts in accordance with the Plan to the holder of such Claim(s) based upon the amount in which such Disputed Claim becomes an Allowed Claim.

9.5     **Disallowed Claims**. All Claims held by any Claimant against whom the Debtor has, or has asserted, a Cause of Action that arises under Chapter 5 of the Bankruptcy Code, or are Disputed by the Debtor, or subject to an objection, will be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and holders of such Claims may not vote to accept or reject the Plan, until the Cause of Action or Claim objection against the Claimant has been settled or a Final Order entered and all sums due the Debtor on account thereof have been received by the Debtor.

9.6     **Estimation of Claims**. The Debtor may for any purpose request that the Bankruptcy Court estimate any Contingent, Unliquidated or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code, without regard to whether such Claim has been subject to a previous objection or whether such objection has been ruled upon or is subject to continued proceedings,

including appeal.

9.7    **Security Deposits**.  To the extent the Debtor has posted security deposits (with landlords, utilities or otherwise), which are less than the Debt secured thereby, those amounts may be set off against Allowed Secured Claims upon the written consent of the Liquidating Agent or upon entry of a Final Order authorizing such offset in satisfaction of such Claim.  To the extent the Debtor has posted security deposits (with landlords, utilities or otherwise), which are greater than the Debt secured thereby, all amounts in excess of the Debt will be remitted to the Liquidating Agent promptly after the Effective Date and will not be offset against any Claim.

## ARTICLE X
## PROVISIONS GOVERNING EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

10.1    **Assumption or Rejection of Executory Contracts**.  Except for those Executory Contracts and Leases previously assumed or rejected during the pendency of the Bankruptcy Case, all Executory Contracts and Leases that existed as of the Petition Date to which the Debtor was a party will be rejected.  Subject to the occurrence of the Effective Date, the rejection of any Executory Contract or Lease pursuant to this Plan will be effective upon the earlier of: (a) the date the Debtor provides notice to the counter-party of the effectiveness of such rejection, or (b) the date specified as the effective date of rejection in any order of the Bankruptcy Court.

10.2    **Approval of Rejection of Executory Contracts and Leases**.  Entry of the Confirmation Order will constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts and Leases rejected pursuant to this Plan.  All Claims resulting from rejection shall be classified as General Unsecured Claims upon Allowance.  Proofs of Claim on account of such Claims shall be filed by the deadline to be established in the Confirmation Order.

## ARTICLE XI
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

11.1    **Condition Precedent to Effectiveness**.  The Effective Date will not occur and the Plan will not become effective unless and until the Confirmation Order has been entered and has become a Final Order.

11.2    **Waiver of Condition Precedent**.  The condition precedent of the Plan may be waived, in whole or in part, by the Debtor and the Committee.  Any such waiver may be affected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

11.3    **Satisfaction of Condition Precedent**.  Any actions required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action.  In the event that the condition precedent specified has not occurred or otherwise been waived, (i) the Confirmation Order will be vacated, (ii) the Debtor and all holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtor's obligations with respect to

-17-

Claims and Interests will remain unchanged and nothing contained in the Plan will constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other person to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

## ARTICLE XII
## EFFECT OF CONFIRMATION

12.1    **Vesting of Assets**.  On the Effective Date, all of the Debtor's remaining property and assets that were not sold or that constituted "Excluded Assets" in the Sale Transaction, including the amount held in the Escrow Accounts and the Chapter 5 Causes of Action together with all rights inuring to the Debtor hereunder, will vest in the post-confirmation estate of the Debtor, free and clear of all Claims, liens, encumbrances, charges and Interests, but specifically subject to the obligations of the Debtor and the Liquidating Agent as provided in the Plan to administer such assets.

12.2    **Binding Effect**.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any holder of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interests of such holder is Impaired under the Plan and whether or not such holder is entitled to distribution under the Plan.

12.3    **No Discharge of Claims**.  The confirmation of the Plan does not discharge the Debtor from any existing Debts and Claims asserted against the Debtor that arose at any time prior to the Effective Date, as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

12.4    **Exculpation**.  *Notwithstanding anything in the Plan to the contrary, as of the Effective Date, neither the Debtor nor the Covered Parties will have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Bankruptcy Case, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Bankruptcy Case, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing will not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.*

12.5    **Injunction or Stay**.  *Except as otherwise expressly provided in the Plan or in the Confirmation Order, all persons or entities who have held, hold or may hold Claims against the Debtor or Debtor-in-Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtor, the Covered Parties, or the Liquidating Agent, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Covered Parties, or the Liquidating Agent with respect to such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor with respect to such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any*

*obligation due to the Debtor or against the property or interests in property of the Debtor with
respect to such Claim, and (v) pursuing any Claim released pursuant to the Plan.*

## ARTICLE XIII
## GENERAL PROVISIONS

13.1    **Headings; Descriptions**.   The headings in the Plan are for convenience of
reference only and will not limit or otherwise affect any provisions of the Plan   The foregoing
descriptions are for informational purposes only and are not an admission by, nor prejudice the
rights of, the Debtor and/or the Liquidating Agent in all respects.   Moreover, the descriptions
contained herein are not exclusive.  The inclusion or exclusion of any actions herein is in no way
a waiver of any objection to Claim or Chapter 5 Cause of Action whatsoever and all such
objections to Claims or Chapter 5 Causes of Action are reserved and preserved.  As of the date
hereof, no determination has been made as to whether to pursue any such potential objections to
Claims or Chapter 5 Causes of Action.

13.2    **Confirmation Order and Plan Control**.  To the extent the Confirmation Order
and/or the Plan is inconsistent with the Disclosure Statement, or any other agreement entered
into between or among the Debtor and any third party, the Plan controls the Disclosure Statement
and the Confirmation Order will control the Plan.

13.3    **Tax Reporting Requirements**.   Each holder of an Allowed Claim that is to
receive a distribution under the Plan will have the sole and exclusive responsibility for the
satisfaction and payment of any tax obligations imposed by any governmental unit, including
income, withholding and other tax obligations, on account of such distribution.

13.4    **Modification of Plan**.  Amendments or modifications of or to the Plan may be
proposed in writing by the Debtor and the Committee, at any time prior to the Confirmation
Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections
1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the
Bankruptcy Code.   The Plan may be altered, amended or modified at any time after the
Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered,
amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy
Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered,
amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances
warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted
the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the
proposed alteration, amendment or modification does not materially and adversely change the
treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and
modifications to the Plan without further order or approval of the Bankruptcy Court, provided
that such technical adjustments and modifications do not adversely affect in a material way the
treatment of holders of Claims or Interests.

13.5    **Revocation or Withdrawal of the Plan**.  The Debtor and the Committee reserve
the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date.  If

the Debtor or the Committee revoke or withdraw the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void.  In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claim or Interest by or against the Debtor or any other person, and nothing in the Plan shall be deemed to prejudice in any manner the rights of the Debtor, the creditors of the Debtor, or any other person or party in any further proceedings involving the Debtor.

13.6   **Dissolution of the Committee**.  On the Effective Date, the Committee will be dissolved and the members thereof will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Case.

13.7   **Expedited Tax Determination**.  The Liquidating Agent is authorized under the Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

13.8   **Substantial Consummation**.  Upon entry of the Confirmation Order and the occurrence of the Effective Date, together with the actions to be taken under this Plan on the Effective Date, this Plan will be deemed substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.  Upon full consummation, an appropriate order will be entered closing the case as set out in this Plan.

13.9   **Final Report**.  Following confirmation, a final report will be filed in accordance with Bankruptcy Rule 2015.

13.10   **Severability of Plan Provisions**.  In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

13.11   **Cancellation of Interests**.  After the Liquidating Agent has made the final distribution of cash to the holder of the Class 7 Interest, has wound up the affairs of the estate and obtained entry of an order closing the Case, the Liquidating Agent shall turn over all control and authority with respect to the Debtor to the Parent for dissolution or such other action as it deems appropriate.

13.12   **Authority of Liquidating Agent to Wind up Affairs of Debtor**.  The Liquidating Agent will be authorized to execute, deliver, file and record such contracts, instruments, assignments, conveyances, bills of sale, releases, indentures, certificates and any other agreement or document and take such action reasonably necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan, without the need for further action by the board of directors or other managing body of the Debtor.

13.13   **Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi without giving effect to its principles of conflict of laws.

13.14   **Notices**.  All notices, requests and demands to or upon the Debtor to be effective will be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, will be deemed to be duly given upon the date of delivery, if delivered by hand; upon the second business day after mailing, if mailed by certified or registered mail with postage prepaid; upon the date of fax transmission, if delivered by fax (with confirmation confirmed); upon the date of transmittal, if delivered by electronic mail; or upon the first day after dispatch, if sent by nationally-recognized overnight courier as follows:

**If to the Debtor**:

Odyssey Petroleum Corp. (US)
301 Highland Park Cove
Suite B
Ridgeland, Mississippi 39157
Attention:  Charles S. Deutchman
E-mail: shrmgtres@aol.com
Fax:  (601) 853-9139

With copies to:

Moore & Manheim, LLP
301 Highland Park Cove, Suite B (39157)
Post Office Box 3344
Ridgeland, Mississippi 39158-3344
Attention: John D. Moore, Esq.
E-mail: john@johndmoorepa.com
Fax: (601) 853-9139

Official Committee of Unsecured Creditors
c/o McCraney, Montagnet & Quin, PLLC
602 Steed Road
Suite 200
Ridgeland, Mississippi 39157
Attention: Douglas C. Noble, Esq.
E-mail: dnoble@mmqlaw.com
Fax: (601) 510-2939

## ARTICLE XIV
## JURISDICTION OF BANKRUPTCY COURT

14.1   **Jurisdiction of Bankruptcy Court**.   Notwithstanding the entry of the Confirmation Order or substantial consummation of the Plan (including after the Bankruptcy Case has been closed), the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Bankruptcy Case, the Plan, and implementation of the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, the following purposes:

(a)   To determine any and all objections to and proceedings involving the allowance, estimation, classification, priority, payment or subordination of Claims or Interests;

(b)   To determine any and all applications or motion for allowances of compensation and reimbursement of necessary expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c)   To determine any and all applications or motions pending on the Effective Date for the rejection or assumption of Executory contracts or Leases or for the assumption and assignment, as the case maybe, of Executory contracts or Leases to which the Debtor is a party or which the Debtor may be liable, and to hear and determine, and if need be, liquidate, any and all Claims arising therefrom including the determination of defaults required to be cured;

(d)   To hear and determine any timely objections to, or requests for estimation of, Disputed Claims, in whole or in part;

(e)   To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtor or by the Buyer on account of Causes of Action purchased from the Debtor in the Sale Transaction, and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Debtor's Bankruptcy Case, including but not limited to, (i) Causes of Action to avoid or recover transfers of the Debtor's property, (ii) all Claims and Causes of Action arising from pre-petition activities of the Debtor, whether arising by statute or common law, whether arising under the laws of the United States, Mississippi or any other state having jurisdiction over any claim or controversy, and whether maintainable against third parties, affiliates or insiders of the Debtor, (iii) Claims, Causes of Action and other litigation that may adversely impact or affect the Post-Confirmation Debtor's property;

(f)   To determine any and all adversary proceedings and contested or litigated matters initiated or asserted by the Buyer related in any manner to the assets purchased from the Debtor in the Sale Transaction, including but not limited to the Oil and Gas Properties, together with any Claims, Causes of Action or any other litigation that may adversely impact or affect the assets purchased from the Debtor in the Sale Transaction;

(g)   To issue such orders in aid of execution of the Plan as authorized by Section 1142 of the Bankruptcy Code;

(h)   To issue orders, determinations and rulings regarding the valuation, recovery, disposition, distribution, operation or use of the Debtor's property, including claims to recover

preferences, fraudulent conveyances or damages of any type from any person and whether initiated before or after the Effective Date;

(i)    To consider any modifications to the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, implementation or consummation of the Plan or any person's obligation and responsibilities thereunder;

(k)    To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtor;

(l)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)    To hear and determine all disputes involving the existence, scope, nature or otherwise of the releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(n)    To issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the consummation, implementation, or enforcement of the Sale Order, the Plan, the Confirmation Order or any other order of the Bankruptcy Court by any person or entity;

(o)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(p)    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(q)    To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Sale Order, the Plan, the Confirmation Order, any transactions or payments contemplated thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(r)    To recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(s)    To determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, 546 and 1146 of the Bankruptcy Code;

(t)    To enforce all orders previously entered by the Bankruptcy Court;

(u)    To hear any other matter not inconsistent with the Bankruptcy Code; and

-23-

(v)      To enter a final decree closing the Debtor's Bankruptcy Case.

## ARTICLE XV
## CONSUMMATION AND CLOSING OF CASE

15.1    **Consummation and Closing**.    The Bankruptcy Case will be closed upon completion of the payments under this Plan and the completion of any litigation pending in the Bankruptcy Case or related Adversary Proceeding.    Upon full consummation, an appropriate order will be entered closing the Case.    Further, the order closing the Bankruptcy Case will provide that all jurisdiction of the Bankruptcy Court will terminate, except such jurisdiction as is otherwise provided for herein, or except and unless the Liquidating Agent requires reopening of this case to enforce any injunctions contained in the order closing this Case, or any other beneficial reason.

WHEREFORE, the Debtor and the Committee hereby request confirmation of their *Third Amended Joint Chapter 11 Plan* pursuant to 11 U.S.C. § 1129.

Dated:  June 7, 2011.

Respectfully submitted,

**ODYSSEY PETROLEUM CORP. (US)**

By:  */s/ Charles S. Deutchman* _____
         Charles S. Deutchman
         Chief Restructuring Officer

OF COUNSEL:

John D. Moore, Esq.
**Moore & Manheim, LLP**
301 Highland Park Cove, Suite B (39157)
Post Office Box 3344
Ridgeland, Mississippi 39158-3344
E-mail: john@johndmoorepa.com
Telephone: (601) 853-9131
Fax: (601) 853-9139
Attorney for Odyssey Petroleum Corp. (US)

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

By: */s/ Jerry Kelley*_____
     Jerry Kelley
     Chairman

OF COUNSEL:

Douglas C. Noble, Esq.
**McCraney, Montagnet & Quin, PLLC**
602 Steed Road
Suite 200
Ridgeland, Mississippi 39157
E-mail: dnoble@mmqlaw.com
Telephone: (601) 707-5725
Fax: (601) 510-2939